## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE APPLICATION OF SHIRA ISRAELLA KLEIN-BENTSUR FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Civil Action No. 2:18-17218 (JLL) (JAD)<br><br>OPINION AND ORDER |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court on an ex parte application by Shira Israella Klein-Bentsur ("Petitioner") requesting that the Court to facilitate the issuance of subpoenas and the gathering of documentary evidence from two entities located in this District: Amnalon LLC and MIG IRC LLC, pursuant to 28 U.S.C. § 1782(a). Petitioner seeks "to obtain discovery from [those entities] . . . in aid of the divorce, alimony, and child support proceedings currently pending in Rabbinical Court in Israel." (Decl. of Shira Israella Klein-Benstur ("Klein-Bentsur Decl.") ¶ 33, ECF No. 1-4). For the reasons set forth below, Petitioner's ex parte application is **GRANTED**.

## I.     BACKGROUND

Petitioner is a citizen of both Israel and the United States. (Klein-Bentsur Decl. ¶ 2). Petitioner and Ron Bentsur (hereinafter "Mr. Bentsur") were married on June 9, 1999. (Id. ¶ 4). The marriage produced three children: Amit, Nadav, and Eylon. (Id.). Early in their marriage, Petitioner and Mr. Benstur allegedly agreed that Mr. Bentsur would work, and Petitioner would take care of the couple's children and home. (Id. ¶ 5). Mr. Bentsur accepted employment as the Chief Financial Officer at Keryx Biopharmaceuticals Inc. and the family moved from Israel to Tenafly, New Jersey. (Id. ¶ 6). Ultimately, Mr. Bentsur became the Chief Executive Officer of Keryx, and held that position until May 2015. (Id.). Mr. Bentsur also served as the Chief Executive Officer of XTL Biopharmaceuticals Ltd. from 2006 to 2009. (Id. ¶ 7).

During this time, Mr. Bentsur allegedly established a reputation as a talented executive in the biomedical field and amassed wealth through various investments, projects, and positions. (Id. ¶ 8). At the same time, Petitioner and Mr. Bentsur grew apart as the result of alleged emotional abuse. (Id. ¶ 9). In 2014, Petitioner and Mr. Bentsur allegedly agreed to return to Israel. (Id. ¶ 10). Petitioner and the three children returned to Israel while Mr. Bentsur stayed in New Jersey until the termination of his contract with Keryx at the end of the year. (Id.). Petitioner alleges that, despite therapy, Mr. Bentsur returned to Israel in 2015 with his emotional issues unresolved. (Id.). Notwithstanding attempts to fix the marriage, including mediation and counseling, Petitioner and Mr. Bentsur commenced a child support action in Israeli Family Court in the hopes of amicably resolving the matter through settlement negotiations. (Id. ¶ 11). While those negotiations were ongoing, Mr. Bentsur allegedly instituted separate divorce and alimony proceedings in Rabbinical Court. (Id.).

Petitioner alleges that Mr. Bentsur failed to disclose all of his assets before the Israeli court and attempted to prolong negotiations in an effort to dispose of his undisclosed assets. (Id. ¶ 14). More specifically, Petitioner alleges that Mr. Bentsur failed to disclose assets totaling $22 million, including an account at JPMorgan worth over $5 million, an account at Bank Leumi worth approximately $3.8 million, and an account at Mizrahi Tefahot Bank Ltd. worth about $2 million. (Id. ¶ 17). Petitioner alleges that during 2015, Mr. Bentsur transferred at least $3.76 million to unknown accounts at TD Bank, N.A. (Id. ¶ 19). In addition, Petitioner alleges that Mr. Bentsur unilaterally and secretly withdrew $1.8 million from a jointly owned real estate investment fund. (Id. ¶ 20). Petitioner also alleges that Mr. Bentsur purchased two luxurious apartments worth approximately $2.5 million, including one that he purchased for a mistress. (Id. ¶ 21).

Petitioner alleges that, after obtaining portions of the couple's U.S. tax filings, she discovered that Mr. Bentsur had misrepresented his income before the Israeli court. (Id. ¶ 24). Petitioner further alleges that Mr. Bentsur failed to disclose income and stock options earned during his employment at various bio-pharmaceutical entities, including Stemline Therapeutics, Inc. and Advanced Inhalation Therapies AIT Ltd., as well as Amnalon LLC ("Amnalon") and MIG IRC LLC ("MIG IRC"). (Id. ¶ ¶ 26, 28).

Petitioner contends that in 2017, while she was on vacation in Thailand with her three children, Mr. Bentsur emptied joint accounts located at Bank Hapoalim, JPMorgan, and TD Bank. (Id. ¶ 29). For instance, Petitioner alleges that Mr. Bentsur made several transfers out of a joint account at TD Bank totaling $500,000. (Id.). Petitioner contends that she withdrew approximately $500,000 after Mr. Bentsur allegedly threatened that he would leave her without any funds to care for herself or the children. (Id.). At the same time, Petitioner alleges that Mr. Bentsur refused to deposit his salary and investment income into joint accounts. (Id. ¶ 30). Petitioner alleges that she presented this evidence to the Rabbinical Court in Israel, which issued a Mareva Injunction. (Id. ¶ 31). Petitioner has now filed this ex parte application under 28 U.S.C. § 1782(a) in order "to obtain discovery from the companies . . . Amnalon and MIG IRC, in aid of the divorce, alimony, and child support proceedings currently pending in Rabbinical Court in Israel." (Id. ¶ 33). Amnalon and MIG IRC are located in Tenafly, New Jersey and Mendham, New Jersey, respectively. (Id. ¶ 34). Petitioner contends that such discovery will help determine "what assets [Mr. Bentsur] has" as well "how, when, and to whom [Mr. Bentsur] has transferred assets." (Id. ¶ 35).

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1782(a), "[t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court." A district court is permitted to grant an application under 28 U.S.C. § 1782 if the following three statutory requirements are met:

> (1) the person from whom discovery is sought resides or is found within the district;
> (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person.

In re Application of Microsoft Corp., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006).

If the statutory requirements are met, a district court may, in its discretion, grant the application. The Supreme Court has identified four discretionary factors a district court may consider when ruling on a § 1782(a) request: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the § 1782 application contains unduly intrusive or burdensome discovery requests. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004).

## III.  **DISCUSSION**

### a.  **Statutory Factors**

The Court finds that Petitioner's application satisfies the statutory requirements of 28 U.S.C. § 1782.  First, Petitioner has represented that the entities from which she seeks discovery – Amnalon and MIG IRC – are located within the District of New Jersey.  Specifically, Petitioner has alleged that "[e]ach of Amnalon and MIG IRC resides or is found in this district, according to their websites, regulatory filings, and/or the New York State Department of State website.  Amnalon is located at 212 Highwood Avenue, Tenafly, NJ 07670.  MIG IRC is located at 20 Calais Road, Mendham, NJ 07945."  (Klein-Bentsur Decl ¶ 34).

Second, Petitioner represents that the discovery she seeks is for the purposes "of the divorce, alimony, and child support proceedings currently pending in Rabbinical Court in Israel." (Id. ¶ 33).  This satisfies 28 U.S.C. § 1782's "foreign or international tribunal" requirement.  See 28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation"); Intel, 542 U.S. at 249 ("Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings'").

Lastly, Petitioner is a litigant involved in "divorce, alimony, and child support proceedings currently pending in Rabbinical Court in Israel."  (Klein-Bentsur Decl ¶ 33).  Petitioner therefore qualifies as an "interested person" under 28 U.S.C. § 1782.  See Intel, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782") (brackets in original).

### b.   Discretionary Factors

#### i.   Jurisdictional Reach of the Foreign Tribunal

The United States Supreme Court has recognized:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.   In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent §1782(a) aid.

Intel, 542 U.S. at 264.  Petitioner contends that "where, as here, discovery is sought from entities that are not participating in the foreign proceedings, the need for court-ordered discovery is apparent." (Petitioner Br. at 6, ECF No. 1-3).  Indeed, nothing in the record suggests that Amnalon or MIG IRC are parties to the matters pending before the Irsaeli court, or that Petitioner might be able to obtain the discovery in question in that forum.  The Court therefore finds that the first discretionary factor weighs in favor of granting Petitioner's application.

#### ii.   Nature and Receptivity of the Foreign Tribunal

Under the second discretionary factor, "a court presented with a § 1782(a) request may consider the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance."  Intel, 542 U.S. at 264.  Nothing in the record suggests whether the Rabbinical Court of Israel would be receptive to judicial assistance from the United States District Court.  Petitioner argues that "there is no evidence that the discovery sought in this application would 'offend' Israel…[or] any indication that the documents sought would be inadmissible in Israel. To the contrary, the discovery requested consists of ordinary business records held by the subpoenaed entities in the

ordinary course of business." (Petitioner Br. at 7, ECF No. 1-3). In any event, "[p]arties that apply for discovery under §1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence." Gov't of Ghana v. ProEnergy Servs. LLC, No. 11-9002, 2011 WL 2652755, at *12 (W.D. Mo. June 6, 2011) (citing Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099–1100 (2d. Cir.1995) ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"). Based on the evidence before the Court, there is no indication that the Rabbinical Court would be unreceptive to the evidence Petitioner seeks here. Thus, the second discretionary factor weighs in favor of granting Petitioner's application under 28 U.S.C. § 1782.

### iii.    Whether the Application is an Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies

The third discretionary factor evaluates "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." Intel, 542 U.S. at 265. Petitioner represents that the "discovery sought in this application does not, to Petitioner's knowledge, violate any restrictions under Israeli law on evidence gathering." (Petitioner Br. at 7, ECF No. 1-3). Nothing in the record suggests that Petitioner's application is "an attempt to circumvent foreign proof-gathering limits." Intel, 542 U.S. at 265. Similarly, nothing before the Court suggests that Petitioner is seeking to circumvent any policy of the United States. Accordingly, the third discretionary factor weighs in favor of granting Petitioner's application.

### iv.    Unduly Intrusive or Burdensome Requests

Under the last discretionary factor, the Court may consider whether the discovery sought is unduly intrusive or burdensome. Intel, 542 U.S. at 265. It does not appear that Petitioner's

proposed subpoenas are either, as each subpoena contains only two fairly specific document requests. However, as this application was made to the Court ex parte, the Court is without sufficient information to conclusively evaluate whether the discovery sought might impose an undue intrusion or burden upon Amnalon or MIG IRC. Once Petitioner serves the requested subpoenas, those entities will have the opportunity to seek an Order from this Court modifying or quashing the subpoenas under Rule 45 of the Federal Rules of Civil Procedure.

Based on the foregoing, the Court finds that each of the discretionary factors weighs in favor of granting Petitioner's application for discovery pursuant to 28 U.S.C. § 1782. Accordingly, because Petitioner's application meets both the statutory requirements of § 1782 as well as the common law discretionary factors, Petitioner's application is **GRANTED**.

## IV.    CONCLUSION

Having carefully considered Petitioner's submission, and for the reasons set forth above;

**IT IS** on this 15th day of February, 2019,

**ORDERED** that Petitioner's application for an ex parte Order compelling discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782, (ECF No. 1), is **GRANTED**; and it is further

**ORDERED** that Petitioner may serve the subpoenas annexed to her application, (ECF No. 1-2), as well as a copy of this Opinion and Order, upon Amnalon LLC and MIG IRC LLC; and it is further

**ORDERED** that, **on or before February 20, 2019**, Petitioner shall file a letter explaining why the Court should not require Petitioner to give Mr. Bentsur notice of her application, this

Opinion and Order, and her subpoenas to Amnalon LLC and MIG IRC LLC.

**SO ORDERED**

_____
**JOSEPH A. DICKSON, U.S.M.J.**